## Truth Freewill Baptist Church
## v. Berwick Township

*Larry W. Wolf,* for plaintiff.
*Joanne S. Faul,* for defendant Berwick Township.
*Thomas E. Miller,* for defendants Mace & Artrips.

KUHN, *J.,* November 17, 1995—This matter commenced when plaintiff, Truth Freewill Baptist Church, filed a complaint in equity against the various defendants. Plaintiff seeks to impose upon the defendants an obligation to bring Little Avenue into compliance with the street specifications of the Berwick Township Subdivision Ordinance and then to have that street dedi-

cated as a public street. Extensive pleadings and discovery followed. Each defendant then filed a motion for summary judgment and plaintiff filed a motion to amend its complaint. These motions are before the court for disposition.

It has often been stated that,

"Summary judgment may be granted if the pleadings, depositions, answers to interrogatories and admissions on file show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. . . . Summary judgment may be entered only in cases that are clear and free from doubt. . . . The moving party . . . has the burden of proving that no material issue of fact exists. . . ." *Allstate Insurance Co. v. McFadden,* 407 Pa. Super. 537, 540, 595 A.2d 1277, 1278 (1991), *allocatur denied,* 529 Pa. 644, 602 A.2d 855 (1991). (citations omitted)

In addition, the record must be examined in a light most favorable to the non-moving party, accepting as true all well-pleaded facts in the pleadings and giving that party the benefit of all reasonable inferences drawn therefrom. *Godlewski v. Pars Manufacturing Company,* 408 Pa. Super. 425, 430, 597 A.2d 106, 109 (1991). Finally, pursuant to the *Nanty-Glo* rule, summary judgment is not available where the moving party relies exclusively upon oral affidavits or depositions to establish the absence of a genuine issue of material fact, except where that oral testimony consists of admissions of the opposing party or his witnesses. *Johnson v. Johnson,* 410 Pa. Super. 631, 637, 600 A.2d 965, 968 (1991).

From the record before the court the following background is revealed. Defendant, Mace Inc. was a Virginia corporation formed by defendants, Cecil and Mary Artrip, who were the sole shareholders and officers of

the corporation. On December 11, 1974, Mace Inc. registered as a foreign business corporation in Pennsylvania to do business in furniture and appliance sales.

The subject real estate[1] lies south of U.S. Route 30 and east of S.R. 94 in Berwick Township. It is part of a larger parcel owned by a Mr. Shultz who sold to Sabre Heights Inc. The shareholders of the latter corporation were Cecil Artrip and his former wife. Mace Inc. bought the subject land from Sabre Heights Inc. and began steps to subdivide the land into five parcels. A gravel road known as Little Avenue extended from Rt. 94 eastward to and through the land purchased by Mace Inc. The stretch of the roadway up to Mace's parcel which will be referred to as the original portion, was not maintained by Berwick Township.

In the spring of 1975, Mace Inc. submitted its subdivision plan to the township. The plan called for three lots on the southern side of Little Avenue with lot no. 1 being on the eastern end of the parcel and lot no. 3 being on the western end. Two parcels, nos. 4 and 5, were situated on the northern side of Little Avenue. At that time the township had in place a subdivision ordinance enacted on January 22, 1966, which required a stone base, macadam surface, curbs and gutters. Section 13 of the ordinance required that the street construction be completed in accordance with township specifications before a subdivision plan be approved or a bond or deposit of funds be submitted to insure compliance.

By letter dated April 28, 1975, the township's engineer recommended that the lot lines be taken to the street

---

1. Deed records show that Mace Inc. purchased real estate in Berwick Township from Sabre Heights Inc. by deed dated May 17, 1974.

right-of-way line to allow for later dedication to the township and that the street be constructed to the eastern edge of lot no. 1. If dedication was not intended at that time, he recommended that Little Avenue be labeled a "private street" on the plan. Mr. Artrip testified that he complained that the cost of extending a paved street across the original portion of Little Avenue to Rt. 94 would be prohibitive. There is some reason to accept this testimony because by letter dated June 23, 1975, the township engineer recommended in response to Mr. Artrip's questions that Mace Inc. construct the roadway from the eastern edge of lot no. 1 to the western edge of lot no. 2. Mr. Artrip testified that the township further agreed to modify its construction specifications and that he hired Henson Paving Company to construct the street. The record contains a bill from Henson Paving indicating that on July 8, 1975, it constructed a "chip and oil road." Mr. Artrip further testified that the township engineer was on the site to inspect construction.

Berwick Township approved the subdivision plan on July 12, 1975, without requiring the posting of a bond. The township did require and had in hand a statement dated July 10, 1975, from Mr. Artrip, in his capacity as president, that "Mace Inc. presently and in the future will maintain Little Avenue from the east end at lot no. 1 to the west end at lot no. 3." The plan had been approved by the township planning commission on July 10, 1975, "subject to the fact that the streets are satisfactory to the township supervisors." (Letter dated July 10, 1975, from Berwick Township Planning Board to the township board of supervisors.) The Adams County Planning Commission "reviewed" the plan on July 14, 1975, and it was recorded the same date with the notation "a private street" beside Little Avenue.

On September 11, 1975, Mace Inc. sold lots no. 4 and 5 to plaintiff. The deed granted the right of travel over "Little Avenue, a 50 feet wide private street . . . ." The deed did not mention any obligation regarding street maintenance. Lot no. 1 became the parsonage for the church and was occupied by the pastor, Buck Riffe, up to 1981. Lot no. 3 was purchased by Mr. and Mrs. Artrip and has been used by them as their residence.

Over the ensuing years, plaintiff's buses and congregation used Little Avenue for church and school purposes. The street gradually deteriorated but at no time was it regularly maintained by the township. Mace Inc. may have done some maintenance. Plaintiff may contend that the township plowed snow on Little Avenue two times prior to 1981 so Mrs. Riffe, a township employee, could get to work. Trash collection is by a private hauler. Mail is not delivered to Little Avenue beyond its intersection with Rt. 94.

Mace Inc. was formally dissolved in Virginia on October 13, 1977. Its withdrawal affidavit dated May 8, 1981, and signed by Mr. Artrip was filed with the Pennsylvania Department of Revenue on March 16, 1981. The affidavit indicates that Mace withdrew from doing business in Pennsylvania on May 1, 1980. There is no record of notice of the dissolution being given by newspaper publication or by notice to any other person or entity. According to Mr. Artrip, all corporate records have been destroyed since at least the early 1980s.

Apparently, the township received some complaints regarding the maintenance of Little Avenue because in late 1982 or early 1983 the township wrote to Mr. Artrip asking that the July 10, 1975 promise regarding street maintenance be honored. Mr. Artrip responded by letter dated January 24, 1983, and advised the township that Mace Inc. had been dissolved for several years

and offered to meet with concerned persons to seek an agreement on road repairs. Mr. Artrip contends that he got no response to his correspondence.

By early 1988, plaintiff had retained counsel to pursue action regarding improvement and maintenance of Little Avenue. Litigation followed in 1989. In a deposition, Mr. Artrip stated that Mace Inc. had its own checking accounts and filed its own income tax returns. He stated that the corporate accountant was deceased. Mr. Artrip added that the last corporate activity was to pay a tax obligation to the Pennsylvania Department of Revenue in 1983 after sheriff's sale of some corporate real estate.

Defendants, Cecil and Mary Artrip, as well as Mace Inc. raise three basic issues in their motion for summary judgment. The first issue relates to the statute of limitations. The second issue relates to the extent that Virginia or Pennsylvania law is applicable to an action against the corporation. The final issue concerns whether the Artrips are individually responsible for the road repairs and maintenance.

One source has written that,

"The general stated purpose of a statute of limitations is to compel the exercise of a right of action within a reasonable period of time after the cause of action accrues, as established by the legislature, and to suppress stale or fraudulent claims, thus giving effect to policies and procedures that expedite litigation and discourage delay in the presentation of stale claims, which delay may greatly prejudice the defense of such claims, and serving to give prompt notice to defendants that claims are being made against them." Standard Pennsylvania Practice 2nd 13:2.

Mace Inc. contends that plaintiff's cause of action is barred by the provisions of 15 Pa.C.S. §1979(a)(2) or its predecessor, 15 P.S. §2111A, both of which provide

a two year statute of limitations against a business corporation after its dissolution. Unfortunately for Mace Inc. those provisions are found in subchapters dealing with domestic business corporations rather than foreign business corporations.[2]

Our research has revealed that 15 P.S. 2015 (now 15 Pa.C.S. §4129) provides that a certificate of withdrawal from doing business in Pennsylvania by a foreign corporation does not affect any action pending at the time thereof, or affect any right of action upon any contract made by the corporation in Pennsylvania before its certificate of withdrawal is issued by the Department of State.

We have also been provided with a copy of §13.1-755 of the Code of Virginia which provides,

"Section 13.1-755. Survival of remedy after termination of corporate existence.—The termination of corporate existence shall not take away or impair any remedy available to or against the corporation . . . for any right or claim existing or any liability incurred, prior to such termination . . . ."

Plaintiff contends that Virginia law allows an indefinite period for bringing actions against a dissolved corporation citing *United States v. Village Corp.,* 298 F.2d 816 (4th Cir. 1962).

The court is mindful that in Pennsylvania the statute of limitations defense is procedural rather than substantive. Standard Pennsylvania Practice 2nd §13:10. As such, statutes of limitations only affect remedies and, by precluding recovery, they do not impair sub-

---

2. We reject the township's argument that 15 Pa.C.S. §4145 is applicable because it refers to actions filed by a shareholder or representative of a foreign corporation against the corporation or the shareholders or representatives thereof.

stantive or fundamental rights. *Id.* section 13:10. Consistent with that principle is the concept that in Pennsylvania "the law of the forum determines the time within which a cause of action shall be commenced." *Unisys Finance Corp. v. U.S. Vision Inc.,* 428 Pa. Super. 107, 112, 630 A.2d 55, 58 (1993); *Bulkin v. Western Kraft East Inc.,* 422 F. Supp. 437, 441 (E.D. Pa. 1976). It thus becomes incumbent to review the applicable Pennsylvania statute of limitations.

We decline to accept the argument that Pennsylvania's "borrowing statute" applies. 42 Pa.C.S. §5521 provides that the period of limitation for a claim accruing outside Pennsylvania is the period provided in the foreign jurisdiction where the claim occurred or the period provided under Pennsylvania law, whichever is shorter. Clearly the claim raised in the instant action did not accrue outside of Pennsylvania.

The statute of limitations defense is applicable to an equity action. 42 Pa.C.S. §5501(c). *United National Insurance Co. v. J.H. France Refractories Co.,* 417 Pa. Super. 614, 612 A.2d 1371 (1992), *allocatur granted,* 533 Pa. 646, 622 A.2d 1377 (1993). It would appear that the instant action is governed either by the statute of limitations set forth in 42 Pa.C.S. §5525 (an implied contract—four years) or section 5527 (six years). The general rule is that the statute of limitations begins to run as soon as the right to institute and maintain the suit arises. Standard Pennsylvania Practice 2nd §13:44.

Therefore, it must be determined when the cause of action accrued. Here, plaintiff essentially contends that Mace Inc. failed to perform a duty. Generally, the cause of action arises from the breach of the duty and not from the time the damage is revealed. Standard Pennsylvania Practice 2nd §13:41.

In this case, we are unable to determine from the record when the street first deteriorated to the point that maintenance was required. Certainly no breach of duty would have occurred prior to that time. Furthermore, duty of maintenance is alleged to be a continuing duty, each breach of which would constitute a new cause of action. Therefore, it cannot be said that Mace Inc. is entitled to summary judgment on this issue.

Mace Inc. also contends that plaintiff has no standing to maintain this action. Mace argues that any promise to maintain Little Avenue was between the township and Mace and that plaintiff has no right in equity to compel Mace to perform that agreement. Plaintiff may be a third party beneficiary of the agreement between Mace and the township and for that reason would have standing. *Schall v. Sandy Township,* 163 Pa. Commw. 336, 641 A.2d 618 (1994). Furthermore, it is not entirely clear that plaintiff could pursue a mandamus action which would compel the township to pursue legal action against Mace. Mandamus may compel a municipality to enforce its ordinances but it will not lie to compel that same municipality to perform an act (*i.e.,* bring legal action against a dissolved corporation or its individual shareholders) which is discretionary.

Next, defendants, Artrips, contend that the record only shows that they acted in their corporate capacity and that they cannot be held individually liable for the corporate obligation. Plaintiff attempts to pierce the corporate veil.

In deciding whether the individual liability of shareholders is present under a theory of piercing the corporate veil, the court must start with the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception. *Brindley v. Woodland Village Restaurant*

140

*Inc.,* 438 Pa. Super. 385, 394, 652 A.2d 865, 870 (1995). Generally, therefore, where a party enters into a contract with a corporation, an action for breach thereof will only lie against the corporation and not the individual shareholders. *First Realvest Inc. v. Avery Builders Inc.,* 410 Pa. Super. 572, 576, 600 A.2d 601, 603 (1991). The Supreme Court *in Wicks v. Milzoco Builders Inc.,* 503 Pa. 614, 470 A.2d 86 (1983) said that when a court pierces the corporate veil the owner is liable because the corporation is not a bona fide independent entity and the acts of the corporation are truly the acts of the owner. In other words, the corporation is a sham and a mere alter ego of the owner. *Id.* at 621, 470 A.2d at 89-90. Thus, "whenever one in control of a corporation uses that control, or uses the corporate assets to further his or her own personal interests, the fiction of the separate corporate identity may properly be disregarded." *Ashley v. Ashley,* 482 Pa. 228, 237, 393 A.2d 637, 641 (1978). Although there is no definitive test for piercing the corporate veil, *First Realvest Inc. v. Avery Builders Inc., supra,* at 578, 600 A.2d at 604, the court will look at whether corporate formalities have been observed, whether corporate records have been kept, whether there are officers and directors who function other than the dominant shareholders, and whether the dominant shareholder has used assets of the corporation as if they were his own. *Hanrahan v. Audubon Builders Inc.,* 418 Pa. Super. 497, 507, 614 A.2d 748, 753 (1992).

Instantly, the complaint itself suggests nothing which would call for piercing the Mace Inc. corporate veil to impose liability upon the Artrips. Discovery revealed that Mace Inc. was the owner and seller of the parcels in the subdivision. Mace Inc. alone agreed to maintain the street. All correspondence and documentation in

the record and dated prior to May 1980, references the corporation and not the Artrips individually.

Plaintiff argues, however, that discovery also revealed several matters which suggests that the corporation was the Artrips' alter ego. First, plaintiff notes that by deed dated November 19, 1979, Mace Inc. sold the balance of the land it obtained from Sabre Heights Inc. to Arnold Forbes for $100,000 but no money was exchanged. Instead, by deed dated March 19, 1980, the Artrips acquired real estate valued at $125,000 and improved with apartments in East Berlin, Pennsylvania, from Oxford Building and Development Co. which was owned by Arnold Forbes. Mr. Artrip stated that the transaction was fashioned in this manner because Mace Inc. owed the Artrips in excess of $100,000 for contributions they previously made to the corporation. Plaintiff argues that this transaction evidences self-dealing. Second, plaintiff alleges that the Artrips acted fraudulently by dissolving the corporation and failing to notify the township and the lot owners along Little Avenue. Third, plaintiff alleges that Mace Inc. engaged in activities (*i.e.,* real estate development and sales) not authorized in its certificate of authority.

Because there are so many corporate records missing and real estate transactions mentioned for which deeds have not been produced, the credibility of witnesses will become critical to a determination of whether the corporate veil can be pierced. There are questions of fact which make the granting of this motion inappropriate.

It should be noted that plaintiff also filed a motion to amend its complaint to add information in support of its allegation that the corporate veil should be pierced. The proposed amendment restates information plaintiff learned in discovery. The amendment will be permitted

as an amplification and elaboration of paragraph 3 of the original complaint. No prejudice is evident.

Finally, we address the motion for summary judgment filed by the township. The motion raises two issues: (1) the township has no duty or authority to maintain a private road and (2) the action claim should be barred by the doctrine of laches.

The township argues that the plan for Little Street as approved by the then board of supervisors clearly denoted that the street was private and that it has no control over private roads. See 53 P.S. §65103. The township further points out that it never accepted a dedication of Little Street in accordance with provisions of the Second Class Township Code, 53 P.S. §66140.

The burden placed upon one who contends that a street is a public street is to show acceptance of dedication by clear and convincing evidence. *Elliott v. H.B. Alexander & Son Inc.,* 41 Pa. Commw. 184, 189, 399 A.2d 1130, 1133 (1979). However, where lots are sold with reference to a plan showing streets, the implication is that the streets have been dedicated for public use. Furthermore, acceptance of dedication can be formal and express, which was not the case here, or implied. Where the implied acceptance is alleged, there must be unequivocal authoritative acts of the township evidencing its intention to accept the dedication. *Id.* Plaintiff contends that the township has made some repairs to Little Avenue and provided some snow removal service. These isolated acts may not be sufficient to amount to unequivocal acts evidencing an intention to accept the street for public use, but the record is not fully developed at this time.

Before proceeding further, we should take note of several relevant statutory provisions in effect in 1975. First, the Second Class Township Code provided in

53 P.S. §66256(c) that the township board of supervisors is not to approve a subdivision plan for recording unless the proposed streets are "installed in strict accordance with the standards and specifications of the township, or that the township be assured by means of a proper completion guarantee in the form of a bond or the deposit of funds or securities in escrow sufficient to cover the cost of the required improvements ...", and that purchasers of lots in the subdivision shall not have liability for completion of the improvements. Second, the Municipalities Planning Code in 53 P.S. §10509 provided that no subdivision plat was to be approved unless streets shown on the plat have been improved as required by the subdivision ordinance or a bond or other sufficient security be deposited to cover the cost of the improvements. In addition, 53 P.S. §10511 gave the municipality authority to take necessary action to obtain or recover the funds necessary to complete the improvements. Interestingly, under the M.P.C., "street" includes, inter alia, streets "used or intended to be used by vehicular traffic or pedestrians whether public or private." 53 P.S. §10107.

We deal here with several apparently conflicting legal concepts. Reference to the aforementioned statutory provisions would seem to impose upon the township a duty to require compliance with its ordinance regarding street construction. Certainly, Mace Inc. installed improvements to Little Avenue and the record suggests that the supervisors deemed those improvements sufficient. Whether the construction met the specifications for street construction at that time is unknown. In *Safford v. Board of Commissioners, Annville Township,* 35 Pa. Commw. 631, 387 A.2d 177 (1978) a township was held liable to construct and maintain streets shown on an approved subdivision plan where the township failed

to require completion of construction before plan approval or require deposit of sufficient funds to guarantee completion of the streets. There is, however, no indication in *Safford* that the subdivision plan expressly stated that the street was "private."

In *Appeal of Estate of Achey,* 86 Pa. Commw. 385, 484 A.2d 874 (1984), *affirmed,* 509 Pa. 163, 501 A.2d 249 (1985) a township ordinance which regulated the construction of streets was held not to be applicable to private roads within a mobile home park. Because the plans submitted in that case noted a disclaimer that "no streets . . . are proposed for public dedication" the streets were found to be private and to only become public after dedication and acceptance.

With these conflicting authorities in mind and because we deal with a motion for summary judgment, the court declines to relieve the township of liability just because the street may be "private." The record must be further developed. The result is not clear of doubt as a matter of law.

Finally, the township argues that plaintiff is guilty of laches in bringing this action. The laches defense requires (1) a delay arising from the other party's delay or lack of due diligence, and (2) resulting prejudice or harm. *United National Insurance Co. v. J.H. France Refractories Co., supra* at 621, 612 A.2d at 1374. Thus, delay alone is not sufficient. *Williamstown Borough Authority v. Cooper,* 404 Pa. Super. 516, 521-22, 591 A.2d 711, 714 (1991), *allocatur granted,* 529 Pa. 651, 602 A.2d 861 (1992). The existence of laches is a factual issue which must be decided on a case by case basis. *Patten v. Vose,* 404 Pa. Super. 426, 429, 590 A.2d 1307, 1309 (1991).

Township contends that plaintiff delayed 14 years from the time it bought its property to institute this

action. The delay, if any, however, is a significantly short period. The issue is road maintenance. When the street fell into disrepair is a factual question not yet resolved. The first indication that complaints were made to the township was in late 1982 or early 1983. The prejudice asserted is the death of two of the three supervisors. The dates of their deaths is unknown, however, there is no indication that the third supervisor, the township secretary, the township engineer or township records are unavailable. Prejudice has, therefore, not been clearly established.

Accordingly, the attached order is entered.

### ORDER

And now, November 17, 1995, the motions for summary judgment filed by the various defendants are denied. Plaintiff's motion to amend is granted.