J-S70044-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| ISLAMIC SOCIETY OF GREATER VALLEY FORGE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BUILDING CONTRACTORS INTERNATIONAL, LTD and JOHN COCIVERA and GARIG VANDERVELDT (MD) and GINA VANDERVELDT AND ANGELA COCIVERA A/K/A/ ANGELA NARDINI and JOANNA COCIVERA | : | |
| | : | |
| APPEAL OF: ISLAMIC SOCIETY OF GREATER VALLEY FORGE | : | No. 1437 EDA 2014 |

Appeal from the Judgment Entered September 4, 2013
in the Court of Common Pleas of Chester County,
Civil Division, at No(s): 12-08706-RC

BEFORE:    LAZARUS, MUNDY, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:    **FILED DECEMBER 09, 2014**

Islamic Society of Greater Valley Forge (Islamic Society) appeals from the September 4, 2014 judgment entered following a verdict in favor of Islamic Society and against Building Contractors International, LTD (BCI). Specifically, Islamic Society challenges the March 5, 2013 order which dismissed on preliminary objections all claims stated in its Amended Complaint against John Cocivera, Garig Vanderveldt, Gina Vanderveldt, and Angela Cocivera (a/k/a/ Angela Nardini) (Individual Defendants,

_____
*Retired Senior Judge assigned to the Superior Court.

collectively).[1]      We reverse the order in part and remand for further proceedings consistent with this memorandum.

The trial court[2] summarized the facts of the case as follows.

> [Islamic Society] contracted with [BCI], as general contractor, to construct a house of worship.  BCI contracted with various subcontractors to complete the project.  [Islamic Society] paid BCI the total contract price of $1,399,050.  Subsequently, [Islamic Society] became aware that BCI failed to pay all of its subcontractors.  In fact, numerous subcontractors filed mechanics liens against the property.  [Islamic Society] further alleges that there were deficiencies in certain aspects of the construction.  With regard to the [I]ndividual Defendants, [Islamic Society] asserts that all four were owners, shareholders or officers of BCI.  The Amended Complaint asserts the following Counts: I - Indemnification Under the Mechanics Lien Statute; II - Breach of Contract; III - Breach of Warranty; IV - Fraud in the Inducement; V - Breach of the Implied Covenant of Good Faith and Fair Dealing; VI - Unjust Enrichment[;] and VII - Piercing the Corporate Veil.  All of the counts were brought against all defendants.  [Islamic Society] stated in a footnote: "[Islamic Society] seeks judgment against all defendants on the basis of a piercing the corporate veil claim as set forth in Count VII below.  All counts against BCI are also asserted against the [Individual] Defendants as they are the owners, shareholder and officers of BCI."  Defendants filed preliminary objections to the Amended Complaint.  The order on appeal sustained in part and overruled in part those objections.  Specifically, the order sustained the objection to Count V as well as the objection to Count VII.  The order also stated that the claims against the [I]ndividual Defendants were dismissed.

Trial Court Opinion, 6/30/2014, at 1-2 (unnecessary capitalization omitted).

---

[1] While Joanna Cocivera is listed in the caption of this case, she is not referenced in Islamic Society's Amended Complaint, the order resolving the preliminary objections thereto, nor Islamic Society's brief on appeal.

[2] The trial court opinion was authored by the Honorable Jeffrey R. Summer, the judge who ultimately tried the case.  The order disposing of the preliminary objections was entered by the Honorable Ann Marie Wheatcraft.

The case proceeded to trial against BCI, resulting in a $462,545.76 verdict in favor of Islamic Society. Islamic Society timely filed a notice of appeal following the entry of judgment on the verdict.[3] Islamic Society timely filed a statement of errors complained of on appeal pursuant to court order, and the trial court filed an opinion.

Islamic Society presents two questions for this Court's review.

> 1. Whether the trial court erred in sustaining the preliminary objections to Count VII of the Amended Complaint seeking to pierce the corporate veil and erred in dismissing all claims against the Individual Defendants [] where sufficient facts were pleaded to support such claims.

> 2. Whether the trial court erred by overruling the preliminary objections to Count VI of the Amended Complaint asserting a claim for fraud in the inducement but dismissing the Individual Defendants from the case…[.]

Islamic Society's Brief at 5 (trial court answers and unnecessary capitalization omitted).

We consider Islamic Society's questions mindful of the following standard of review.

> Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the

---

[3] The March 5, 2013 order did not dispose of all claims and all parties, and only became final and appealable after judgment was entered on September 4, 2014. *See, e.g., **Strausser v. PRAMCO, III**, 944 A.2d 761, 764 (Pa. Super. 2008) (holding that when different defendants are removed from a case piecemeal, the orders dismissing earlier defendants become appealable when the case is resolved as to the final defendant; prior to such resolution the orders were not final).

- 3 -

appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint…. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Little Mountain Community Ass'n, Inc. v. Southern Columbia Corp.*, 92 A.3d 1191, 1195 (Pa. Super. 2014) (quoting *Joyce v. Erie Ins. Exch.*, 74 A.3d 157, 162 (Pa. Super. 2013)). "The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible." *Shafer Elec. & Const. v. Mantia*, 96 A.3d 989, 994 (Pa. 2014) (quoting *Lord Corp. v. Pollard*, 695 A.2d 767, 768 (Pa. 1997)).

Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer. All material facts set forth in the pleading and all inferences reasonably deducible therefrom must be admitted as true.

*Hill v. Ofalt*, 85 A.3d 540, 547 (Pa. Super. 2014) (quoting *Lugo v. Farmers Pride, Inc.*, 967 A.2d 963, 966 (Pa. Super. 2009)).

We first consider the trial court's sustaining of a demurrer as to the contract claims against Individual Defendants. "It is fundamental contract law that one cannot be liable for a breach of contract unless one is a party to

that contract." ***Electron Energy Corp. v. Short***, 597 A.2d 175, 177 (Pa. Super. 1991). There is no dispute that Islamic Society's contract was with BCI alone; Individual Defendants were not parties thereto. Islamic Society's Brief at 13. However, Islamic Society's contract-based claims against Individual Defendants are based upon a theory of piercing BCI's corporate veil.

"The purpose of the doctrine of piercing the corporate veil is to assess liability for the acts of a corporation to the equity holders in the corporation by removing the statutory protection otherwise insulating a shareholder from liability." ***Newcrete Products v. City of Wilkes-Barre***, 37 A.3d 7, 12 (Pa. Cmwlth. 2012).

> There is a strong presumption in Pennsylvania against piercing the corporate veil. When making the determination of whether to pierce the corporate veil, the court must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual, circumstances call for an exception. Care should be taken on all occasions to avoid making the entire theory of corporate entity ... useless.

***S.T. Hudson Engineers, Inc. v. Camden Hotel Development Associates***, 747 A.2d 931, 935 (Pa. Super. 2000) (internal citations and quotation marks omitted).

Factors courts consider when determining whether to pierce the corporate veil include corporate undercapitalization, the failure to adhere to corporate formalities, a substantial intermingling of corporate and personal affairs, the use of corporate assets for personal interests, and the use of the

corporate form to perpetrate a fraud. ***Advanced Telephone Systems, Inc. v. Com-Net Professional Mobile Radio, LLC***, 846 A.2d 1264, 1278 (Pa. Super. 2004).

In the instant case, Islamic Society offered the following averments in support of proceeding against Individual Defendants on the contract claims under a piercing-the-corporate-veil theory.

71. BCI was insufficiently capitalized prior to entering in to the Construction Contract and during the course of the Project. The reality of the capitalization of BCI does not match the documents proffered by Defendants in their attempt to induce [Islamic Society] to enter into the Construction Contract.

72. The individual Defendants, Mr. Cocivera, Mr. Vanderveldt, Mrs. Vanderveldt and Ms. Nardini, as the alter ego of BCI, have conducted, managed, and controlled BCI's affairs without regard to the separate existence of the corporate entity, and have used the corporation to deprive [Islamic Society] and the subcontractors of the monies that are rightfully due and owing.

73. The individual Defendants, Mr. Cocivera, Mr. Vanderveldt, Mrs. Vanderveldt and Ms. Nardini, have at all times relevant hereto exercised total control over BCI.

74. The individual Defendants, Mr. Cocivera, Mr. Vanderveldt, Mrs. Vanderveldt and Ms. Nanlini, have misused the corporate form for their own personal benefit.

75. The individual Defendants, Mr. Coeivcra, Mr. Vanderveldt, Mrs. Vanderveldt and Ms. Nardini, have commingled personal and financial affairs with those of the corporate entity.

76. The individual Defendants, Mr. Cocivera, Mr. Vanderveldt, Mrs. Vanderveldt and Ms. Nardini, have misappropriated company funds to pay personal expenses.

77.   BCI has failed to observe corporate formalities.

78.   Defendants further misrepresented and held out certain parties to be owners, officers and shareholders of BCI, when they were not.

79.   Conversely, Defendants represented certain parties were not owners, officers and shareholders of BCI, when they actually were.

80.   Defendants made the aforesaid false representations with the express intent of misleading [Islamic Society].

\* \* \*

82.   The individual Defendants, Mr. Coeivera, Mr. Vanderveldt, Mrs. Vanderveldt and Ms. Nardini, have acted in a fashion such that what they did as representatives of BCI and what they did in a personal capacity were indistinguishable.

Amended Complaint, 11/15/2012, at 19-20.   The trial court sustained the objections to Count VII (piercing the corporate veil), noting the presumption against piercing the corporate veil and that the "corporate form will be disregarded only when the entity is used to defeat public convenience, justify wrong, protect fraud or defend crime."[4]   Order, 3/5/2013, at 3 n.5 (citing **Good v. Holstein**, 787 A.2d 426, 430 (Pa. Super. 2001)).

_____

[4] The trial court further dismissed all claims against Individual Defendants because "[p]rivity of contract must exist between the parties for plaintiff to maintain an action for breach of contract.   Only the corporation may ordinarily be held liable for contract damages.   If the president of a corporation signs a contract in his representative capacity and the contract does not suggest that the president will have personal liability, the president is not personally liable under the contract.   Defendant John Cocivera signed the contract as a representative on behalf of [BCI].   None of the other [I]ndividual [D]efendants signed the contract."   Order, 3/5/2013, at 3 n.6.

Islamic Society maintains that the trial court erred in so doing, arguing that reversal is warranted by this Court's decision in *Village at Camelback Property Owners Assn. Inc. v. Carr*, 538 A.2d 528 (Pa. Super. 1988). Individual Defendants, on the other hand, claim that resolution of the instant case is controlled by *First Realvest, Inc. v. Avery Builders, Inc.*, 600 A.2d 601 (Pa. Super. 1991). We examine those two cases, both of which concerned dismissal of piercing-the-corporate-veil claims on preliminary objections.

In *Village at Camelback*, the plaintiff homeowners' association sued Carr and several corporations and limited partnerships of which it alleged Carr was an officer, a director, the controlling shareholder, or the controlling partner. 538 A.2d at 530. On claims of breach of contract and breach of warranties, the plaintiff sought to hold Carr personally liable based upon a theory of piercing the corporate veil. In support, the plaintiff alleged the following facts:

> (a) the corporations were insufficiently capitalized at the outset;
>
> (b) there was an intermingling of funds between and among the corporations as well as with personal assets of Defendant Carr;
>
> (c) other officers and directors, if any, of the corporations were not functioning;
>
> (d) the corporations failed to observe corporate formalities;
>
> (e) the corporations did not pay dividends in the regular and ordinary course of their business; and

- 8 -

(f) in conducting the business affairs of the corporations Defendant Carr consistently held himself out as individually conducting such affairs without use of the corporate names and without identifying that his actions were taken as an officer or employee of the corporation.

*Id.* at 535. The trial court sustained Carr's preliminary objections in the nature of a demurrer as to all counts of the complaint.

On appeal, this Court noted that the plaintiff "pled that the precise factors that have compelled numerous other courts to pierce the corporate veil are present in this case." *Id.* While the complaint did not offer much detail, that was not a basis to sustain a demurrer: "Although such generalized pleading is not favored in that it does not provide in detail the material facts supporting the pleaded ultimate facts, this is not a deficiency that warrants the extreme sanction of dismissal on demurrer." *Id.* Therefore, because this Court could not "say with certainty that this complaint is facially devoid of merit with regard to piercing the corporate veil," it reversed the dismissal of the claims against Carr. *Id.*

In *First Realvest*, the plaintiff's factual averments in support of piercing the corporate veil were as follows, *en toto*:

> Defendants, Bud Avery and Marcia Avery, formed Avery Builders, Inc. for their own benefit in that corporate funds are intermingled with their own or other alleged corporations owned by them and that they divert corporate funds to their own use and treat the corporation as an individual proprietorship and as an "alter ego."

600 A.2d at 604. The trial court granted the Averys' preliminary objections in the nature of a demurrer, and this Court affirmed, with the following explanation.

> The contents of this paragraph are not sufficient to support the extreme remedy of piercing the corporate veil. All corporations are formed for the benefit of their shareholders and the shareholders draw out profits. It is ridiculous to say that the corporate form should be abandoned because a shareholder drew out funds; such a conclusion would render the corporate form useless. Whether or not the corporation is treated as a sole proprietorship or an alter ego requires a conclusion of law and is not properly considered here. Further, there are no facts pled here to support such a conclusion.

*Id.*

Our comparison of the facts alleged in the above cases to those alleged in the instant case leads us to conclude that Islamic Society's Amended Complaint was sufficient to survive a demurrer. The averments in the instant case are analogous to, if not more substantial than, those held to be legally sufficient in ***Village at Camelback***. Islamic Society makes averments that Individual Defendants, *inter alia*, failed to operate BCI in accordance with corporate formalities, misused the corporate form for personal benefit, hid BCI's undercapitalization, and misappropriated corporate funds to pay personal expenses. Unlike the plaintiff in ***First Realvest***, Islamic Society does not rely upon legal conclusions or statements of shareholder interest that are applicable to all corporations.

Individual Defendants characterize Islamic Society's allegations as "bald statements" and "legal conclusions" rather than "factual averments," and claim "[n]o reasonable person or jury could take the conclusions at face value without any evidence." Individual Defendants' Brief at 11-12. Clearly, the allegations are factual in that they relate things that Individual Defendants did or did not do, rather than the legal implications of those actions or inactions. Regarding the claim that the allegations are not supported by evidence, we remind Individual Defendants that at the preliminary objections stage, factual averments must be accepted as true and no other evidence may be considered. *Hill*, 85 A.3d at 547.

Although there is a presumption against disregarding the corporate form, and Islamic Society will be required as the case proceeds to support its allegations with evidence strong enough to overcome that presumption, Islamic Society's piercing-the-corporate-veil allegations are legally sufficient to survive preliminary objections. Accordingly, the trial court erred as a matter of law in dismissing those claims as to the Individual Defendants.

We now consider the trial court's dismissal of Islamic Society's tort claim against Individual Defendants. In Count IV of the Amended Complaint, Islamic Society alleged the following against BCI and Individual Defendants in support of its claim of fraud in the inducement.

> 54. Defendants created a scheme to induce, lure, and by artifice delude [Islamic Society] into believing that BCI would and/or could fulfill its obligations under the Construction

- 11 -

Contract and that BCI would pay subcontractors for the work they performed from the funds that were given to BCI from [Islamic Society], thus inducing [it] to enter into the Construction Contract.

55. Defendants misrepresented the financial health of BCI to lure and induce [Islamic Society] to enter into the Construction Contract.

56. Although the [I]ndividual Defendants represented that BCI had no liabilities and provided fraudulent documentation to [Islamic Society] reflecting same, the reality is that BCI had significant liabilities at the time it entered into the Construction Contract.

57. Defendants further misrepresented and held out certain parties to be owners, officers and shareholders, when they were not.

58. Conversely, Defendants misrepresented certain parties were not owners, officers and shareholders, when they actually were.

59. Defendants made the aforesaid false representations with the intent of misleading [Islamic Society].

60. [Islamic Society] justifiably relied on the aforementioned false representations to its detriment and entered into the Construction Contract with BCI.

Amended Complaint, 11/15/2012, at 15-16. Islamic Society claimed that all of Defendants were liable, noting that it was pursuing Individual Defendants on the theory of piercing the corporate veil. *Id.* at 16.

BCI and Individual Defendants demurred to this count, maintaining that the gist of the action and economic loss doctrines prohibited Islamic Society from pursuing as a tort claim what was really a breach of contract claim, and that Islamic Society cannot show justified reliance given that the

alleged misrepresentations occurred outside of a fully-integrated contract. Preliminary Objections to Amended Complaint, 12/7/2012, at 8.

Holding that neither the economic loss doctrine nor the gist of the action doctrine barred claims for fraud in the inducement, the trial court overruled the objection. Order, 3/5/2013, at 2 n.2. However, in sustaining the objection to the piercing-the-corporate-veil count as discussed above, the trial court nonetheless dismissed Islamic Society's fraud claim insofar as it was stated against Individual Defendants. *Id.* at 2.

Islamic Society argues that the trial court erred in dismissing the misrepresentation claim as to Individual Defendants not only because they are liable for BCI's actions, but because Individual Defendants personally participated in the fraud. Islamic Society's Brief at 23-24.

> There is a distinction between liability for individual participation in a wrongful act and an individual's responsibility for any liability-creating act performed behind the veil of a sham corporation. Where the court pierces the corporate veil, the owner is liable because the corporation is not a *bona fide* independent entity; therefore, its acts are truly his. Under the participation theory, the court imposes liability on the individual as an actor rather than as an owner. Such liability is not predicated on a finding that the corporation is a sham and a mere alter ego of the individual corporate officer. Instead, liability attaches where the record establishes the individual's participation in the tortious activity.

**Wicks v. Milzoco Builders, Inc.**, 470 A.2d 86, 89-90 (Pa. 1983) (footnote omitted).

- 13 -

In resolving this question, we again are guided by this Court's decision in *Village at Camelback*. Therein, after determining that the complaint was legally sufficient to survive individual defendant Carr's preliminary objections to the appellant's count supporting piercing the corporate veil, this Court considered the trial court's sustaining of a demurrer to tort claims.

> Insofar as appellant here attempts to hold Carr personally liable for the torts of the corporation under the theory of piercing the corporate veil, the analysis of the sufficiency of [that count] set forth above is equally applicable. Appellant has pleaded enough to survive a demurrer on this ground.

> Insofar as appellant attempts to hold Carr individually liable for the commission of the three named torts, we perceive appellant as pleading that Carr personally participated in the tortious acts of the corporations and that he is, therefore, liable under the "participation theory." Once again, we conclude that appellant has pleaded sufficient ultimate facts to survive a demurrer. In this regard, appellant has alleged that Carr, presumably acting in his capacity as an officer of the corporate defendants, personally participated in negligent acts, misrepresentations and conversion. Indeed, reading the complaint as a whole, it appears clear that appellant asserts that Carr was the sole moving force behind all of the corporate defendants and was directly involved in all of their actions pertinent to this dispute. The trial court's grant of Carr's demurrer to [the tort counts] was improper.

*Village at Camelback*, 538 A.2d at 535-36.

The same analysis applies in the instant case. Because we have held that Islamic Society pled sufficient facts to defeat the preliminary objection to the piercing-the-corporate-veil count, it necessarily follows that it has pled sufficient facts to defeat a demurrer on the fraud claim. Islamic Society's additional allegations that Individual Defendants personally

- 14 -

participated in the fraud, further renders improper the dismissal of the fraud claim against Individual Defendants. For both of these reasons, we must conclude that the trial court committed an error of law in dismissing Islamic Society's tort claim against Individual Defendants.

Accordingly, we reverse paragraphs five (sustaining the objections to Count VII) and six (dismissing "all claims against John Cocivera, Garig Vanderveldt, Gina Vanderveldt, and Angela Cocivera a/k/a/ Angela Nardini individually") of the trial court's March 5, 2013 order, and remand the case for further proceedings consistent with this memorandum.

Order reversed in part. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary


Date: 12/9/2014