470 A.2d 86

Robert B. WICKS and Lucy J. Wicks, Individually and as Parents and Natural Guardians of Jill, Geoffrey and Audrey Wicks, Minors, and Charles J. Bauer and Ruth M. Bauer, Individually and as Parents and Natural Guardians of Ruth, Charles, John, Linda and Michelle Bauer, Minors, and Donald L. Sheriff and Pamela K. Sheriff, Individually and as Parents and Natural Guardians of Michael Sheriff, a Minor, Appellants,

v.

MILZOCO BUILDERS, INC., Carroll Builders, Inc., R.L. Sheibley and Benjamin Breneman trading as R.L. Sheibley Construction Company, and Michael A. Serluco and Benjamin Breneman d/b/a Georgian 'Hall Real Estate, Eugene Cook; Chester Miller; Wesley Zollers, Scott Greenfield and John C. Brilhart, Appellees.

William E. LELLO and Linda J. Lello, Appellants,

v.

MILZOCO BUILDERS, INC., Carroll Builders, Inc., R.L. Sheibley and Benjamin Breneman trading as R.L. Sheibley Construction Company; Eugene Cook; Chester Miller; Wesley Zollers; and John C. Brilhart, Appellees.

Supreme Court of Pennsylvania.

Argued Oct. 20, 1983.

Decided Dec. 29, 1983.

Richard C. Angino, Harrisburg, for appellants.

Harold S. Irwin, III, Carlisle, for Milzoco Builders et al.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHER-TY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

This is an appeal by allowance from an order of the Superior Court, 291 Pa.Super. 345, 435 A.2d 1260, which affirmed an order entered by the Court of Common Pleas of Cumberland County. Common Pleas had sustained appellees Miller, Cook and Zollers' preliminary objections to appellants' fourth amended complaints.

Appellants are homeowners who reside in a development known as Monroe Acres. Appellees Miller, Cook and Zollers are respectively President, Vice-president and Secretary of Milzoco Builders, Inc., the developer of Monroe Acres. In addition, Cook and Zollers are apparently sole shareholders of Carroll Builders, Inc., the builder of a home which appellants, the Bauers, purchased in the development.[1] Each homeowner filed a separate complaint in trespass and assumpsit against Milzoco Builders, Inc. and Carroll Builders, Inc. and against Miller, Cook and Zollers individually and others on theories of breach of implied and express warranties, negligence, misrepresentation and strict liability seeking to recover damages for personal injuries and property damage they claim resulted from drainage problems in Monroe Acres.

The sole question presented for our decision is whether Superior Court erred in affirming the dismissal of all the actions in trespass against appellees on the ground that appellants failed to plead facts on which Miller, Cook and Zollers could be held personally liable for the alleged tortious actions and omissions of Milzoco Builders and Carroll Builders. We hold that the facts generally averred in

---

1. While Milzoco Builders developed the entire subdivision, Carroll Builders built only the Bauers' home. R.L. Sheibley and Benjamin Breneman, party defendants below, built the homes of plaintiffs, the Sheriffs and the Wickses, and took no active part in ·this appeal. D. Terry Miller, who built plaintiffs Lellos' home, is not a party to the case. Moreover, Milzoco Builders, Inc. and Carroll Builders, Inc., individual appellees' corporations, did not take any active part in this appeal.

appellants' complaints state a cause of action in tort against appellees sufficient to withstand a demurrer and, accordingly, reverse the Superior Court.

Monroe Acres is situated on a sixty-acre tract of land which had been a farm before its purchase and development by Milzoco. A part of the development is on sloped land. Appellants' homes are located in the basin. Consequently, water and sewage generated by homes situated on higher ground drains onto appellants' properties.

Appellants say that excessive surface water run-off from higher elevations periodically floods their yards and basements, that their properties have become receptacles for chemical run-off, bacteria and slime and that their wells and septic tanks are now contaminated by sewage and toxic chemicals. They further say that these conditions have made their homes uninhabitable and have caused serious health problems for family members. Moreover, they say that appellees corporations' attempt to remedy the problem by digging drainage trenches served not only to make the flooding and sewage problems worse, but also created unsightly and dangerous ponds on their properties.

Appellees, officers of the corporate defendants, filed preliminary objections in the nature of motions to strike, motions for more specific pleadings and demurrers. The Court of Common Pleas overruled the motions to strike and for more specific pleadings but sustained the demurrers holding that the complaints did not state a cause of action against Miller, Cook and Zollers, individually and apart from their capacities as corporate officers of Milzoco Builders or Carroll Builders. Superior Court affirmed the order of Common Pleas sustaining these demurrers.

Appellants' complaints state, in the most general terms, that appellees were aware, or should have been aware, of potential drainage problems at Monroe Acres and, there-

fore, were negligent in failing to take appropriate measures to eliminate, or at least minimize, such problems.[2]

Specifically, the complaints allege that:

Prior to the aforesaid purchase, individual defendants Miller, Cook, Zollers and Brilhart, and their principals, Milzoco and Carroll Builders, were aware or can be imputed to have been aware from experienced observations and from initial surveys that the proposed "Monroe Acres" Development would be built on a slope and that natural drainage would concentrate much of the development's water and sewage on approximately a half dozen proposed lots in the vicinity of Lisburn Road.

Despite this knowledge said defendants did not order or perform adequate soil testing of the site of the concentrated sewage and water.[3]

Moreover, Paragraphs 20 and 59 of the Bauers' complaint additionally state that:

Defendants Cook and Zollers, doing business as Carroll Builders, being "experts" in the construction field and having substantial experience pertaining to Milzoco's development of "Monroe Acres" knew or can be imputed to have known or should have tested for the potential drainage problems with the aforesaid mentioned house and, furthermore, negligently failed to provide for any special drainage considerations in the grading and landscaping of said premises.

2. Appellants' allegations are arguably impermissibly vague under our fact pleading system. However, the appropriate remedy for this type of insufficiency is an order to plead more specifically on pain of dismissal, not demurrer. *See, e.g., Local No. 163, I. Union v. Watkins,* 417 Pa. 120, 122, 207 A.2d 776, 778 (1965) ("[a] motion for a more specific complaint, under Pa.R.C.P. 1017(b)(3), is available so that a defendant's right and ability to answer and defend will not be unduly impaired by a plaintiff's vagueness in stating the grounds of his suit"). Of course, a motion for more specific pleading is distinguishable from a demurrer which challenges the legal adequacy of the grounds asserted rather than their specificity. *Id.*

3. These two allegations are set forth respectively in Paragraphs 12 and 13 of the Wickses', Sheriffs' and Bauers' complaints and in Paragraphs 11 and 12 of the Lellos' complaint.

Defendants Cook and Zollers doing business as Carroll Builders were negligent in failing to foresee the potential problems with the instant lot in question, in building and selling the bi-level house to plaintiffs, which house because of its location, undoubtedly would have a drainage problem, in failing to provide in the grading and landscaping for adequate aesthetically pleasing drainage facilities and/or in their negligent excavation of the aforementioned drainage ditches.[4]

Superior Court based its order affirming the dismissal on demurrer on the ground that the appellants failed to state either that Miller, Cook and Zollers acted beyond the scope of their authority as agents of their corporations, committed fraud or engaged in criminal conduct. Superior Court thus incorrectly held that fraud, criminality or unauthorized acts must be present to find corporate agents liable.[5] Superior Court cited two cases as authority for this holding. The first, *Bala Corporation v. McGlinn*, 295 Pa. 74, 144 A. 823 (1929), is inapposite. There, the plaintiff corporation entered into an enforceable contract with the defendant corporation in which the defendant agreed to obtain financing for a cooperative apartment house to be constructed by the plaintiff. The defendant breached the contract and plaintiff sued certain officers and agents of the corporation individually. In refusing to impose personal liability on those corporate officers and agents, this Court held that where the plaintiff knowingly dealt with the corporation as such,

---

**4.** Obviously, appellees can be held liable in tort only to the Bauers for acts arising out of their involvement in Carroll Builders since the other appellants had no relation with Carroll Builders.

**5.** Superior Court also states conclusively that "absent allegations ... as to actions outside the scope of their authority as agents, no cause of action against [appellees] exists." However, whether appellees acted within or beyond the scope of their authority as corporate officers is irrelevant. "The fact that an officer is acting for a corporation also may make the corporation vicariously or secondarily liable under the doctrine of respondeat superior; it does not however relieve the individual of his responsibility." *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir.1978). *See also Zubik v. Zubik*, 384 F.2d 267, 275 (3d Cir.), *cert. denied*, 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1967).

and had full right of action against it, there was no reason why the officers, who were charged neither with fraud nor falsehood, should be held individually liable. *Id.*, 295 Pa. at 78, 144 A. at 824. In so holding, this Court relied on the general rule that " '[w]henever a corporation makes a contract, it is the contract of the legal entity of the artificial being created by the charter, and not the contract of the individual members.' " *Id.* 295 Pa. at 79, 144 A. at 824 (citations omitted). Although this Court determined that individual liability could not attach in an action brought in assumpsit, we implicitly recognized that corporate officers could be held liable for their own tortious actions.

In addition, Superior Court cited *McKenna v. Art Pearl Works, Inc.*, 225 Pa.Superior Ct. 362, 310 A.2d 677 (1973). The court's reliance on *McKenna*, too, is misplaced. In that case, the plaintiff sued to recover for personal injuries sustained while operating a punch press which had been purchased by plaintiff's employer from Art Pearl Works, Inc., through its President and authorized agent, Bernard Dorfmann. Plaintiff sued both the Corporation and Dorfmann. The court noted that there was no evidence or averment of fraud, criminal conduct or other *ultra vires* conduct on the part of the corporation. Accordingly, the court concluded that "[a]bsent evidence that said corporation was being used for some illegal purpose, we cannot say that the mere fact that appellee [corporation] sold a defective machine, which subsequently injures an employee of the buyer, would justify holding the selling agent personally liable." *Id.*, 225 Pa.Superior Ct. at 366, 310 A.2d at 680. In reaching this conclusion, the Superior Court stated:

> We have said that the "equitable doctrine of piercing the corporate veil [should be employed] to prevent the perpetration of wrong; to prevent its use as a shield for illegal and wrongful conduct; or where its use, as a technical device, brings about injustice or an inequitable situation so that justice and public policy demand it be ignored. However, we have not done so where the rights of innocent parties are involved and the corporation is

used for a legal purpose, as otherwise the entire theory of the corporate entity would be made useless." *Price Bar, Inc. Liquor License Case*, 203 Pa.Superior Ct. 481, 484, 201 A.2d 221 (1964).

*Id.*

■ In the instant case, however, appellants have not challenged the legitimacy of Milzoco Builders or Carroll Builders nor have they alleged that appellees have used the corporate form merely as a vehicle by which they seek to engage in illegal or improper acts with impunity. Instead, appellants seek to hold Miller, Cook and Zollers liable on the theory that they personally participated in the alleged tortious acts committed on behalf of the corporations. There is a distinction between liability for individual participation in a wrongful act and an individual's responsibility for any liability-creating act performed behind the veil of a sham corporation. Where the court pierces the corporate veil, the owner is liable because the corporation is not a bona fide independent entity; therefore, its acts are truly his.[6] Under the participation theory, the court imposes liability on the individual as an actor rather than as an owner. Such liability is not predicated on a finding that the corporation is a sham and a mere alter ego of the individual corporate officer. Instead, liability attaches where the record establishes the individual's participation in the tortious activity. *See Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir.1978).

Pennsylvania law recognizes the participation theory as a basis of liability.

> The general, if not universal, rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor; but that an

6. The averment in paragraphs 20 and 59 of the Bauers' complaint that Cook and Zollers were "doing business as Carroll Builders" is wholly insufficient to raise the sham corporation issue and could not withstand demurrer. The same is true of other references to individual appellees as "partners." Thus, the "corporate veil" theory is not properly part of this case and the demurrer was correctly sustained as to any such theory.

officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable to third persons for such a tort, nor for the acts of other agents, officers or employees of the corporation in committing it, unless he specifically directed the particular act to be done or participated, or cooperated therein.

3A Fletcher, *Cyclopedia of the Law of Private Corporations* § 1137, p. 207 (perm. ed. rev. 1975). *Accord Chester-Cambridge B. & T. Co. v. Rhodes,* 346 Pa. 427, 433, 31 A.2d 128, 131 (1943); *Amabile v. Auto Kleen Car Wash,* 249 Pa.Superior Ct. 240, 250, 376 A.2d 247, 252 (1977); *Donsco, Inc. v. Casper Corp.,* 587 F.2d at 606; *Martin v. Wood,* 400 F.2d 310, 312 (3d Cir.1968) (applying Pennsylvania law).

Liability under this theory attaches only where the corporate officer is an actor who participates in the wrongful acts. Therefore, corporate officers may be held liable for misfeasance. *Chester-Cambridge B. & T. v. Rhodes,* 346 Pa. at 432, 31 A.2d at 131. *See also Knuth v. Erie-Crawford Dairy Cooperative Ass'n.,* 463 F.2d 470, 481 (3d Cir.1972), *cert. denied,* 410 U.S. 913, 93 S.Ct. 966, 35 L.Ed.2d 278 (1973) (under Pennsylvania law directors of a marketing corporation who approved sales of milk at a price below that authorized by their principals are deemed to have participated in conversion and are liable therefor). Nevertheless, corporate officers and directors may not be held liable for mere nonfeasance. *Chester-Cambridge B. & T. v. Rhodes,* 346 Pa. at 432, 31 A.2d at 131; *Hager v. Etting,* 268 Pa.Superior Ct. 416, 422, 408 A.2d 856, 859 (1979). *See also Cohen v. Maus,* 297 Pa. 454, 457, 147 A. 103, 104 (1929) (directors of a corporation cannot be held individually liable for a conversion by the corporation and its general manager about which they knew nothing simply because they might have discovered the conversion by examining the corporate records). Thus, the mere averment that a corporate officer should have known the consequences of the liability-creating corporate act is subject to a motion to strike for impertinence and proof of that aver-

ment alone is insufficient to impose liability. However, the pertinent averments in these complaints can be read as setting forth, generally, that the individual appellees actually knew that the location of the proposed Monroe Acres Development created, at least, an unreasonable risk of the drainage problems which occurred and that, having the power to do so, they deliberately ordered the work to proceed. *See Allen v. Morris Building Company,* 360 Mich. 214, 103 N.W.2d 491 (1960).

Under Pa.R.C.P. 1019(a) the plaintiff need only plead ultimate facts; evidentiary facts need not be set forth in the complaint. *United Refrigerator Co. v. Applebaum,* 410 Pa. 210, 213, 189 A.2d 253, 255 (1963). This complaint, while bare of evidentiary facts, when read as a whole, does state ultimate facts on which the appellants depend to show Miller, Cook and Zollers' liability, in the most general terms. *Frey v. Dougherty,* 286 Pa. 45, 48, 132 A. 717, 718 (1926).

It may later become apparent, from undisputed facts that appellees are entitled to summary judgment or even judgment on the pleadings. *See* Pa.R.C.P. 1035; *Line Lex. L. & M. Co., Inc. v. Pa. Pub. Corp.,* 451 Pa. 154, 162, 301 A.2d 684, 689 (1973). However, considering the stringent standards our Court has developed for sustaining a demurrer, appellants should not have been put out of court on these complaints. As we have often stated:

A demurrer admits every well-pleaded material fact set forth in the pleadings to which it is addressed as well as all inferences reasonably deducible therefrom, but not conclusions of law. *Buchanan vs. Brentwood Federal Savings and Loan Association,* 457 Pa. 135, 320 A.2d 117 (1974); *Bordon v. Baldwin,* 444 Pa. 577, 281 A.2d 892 (1971); *Papieves v. Lawrence,* 437 Pa. 373, 263 A.2d 118 (1970). In order to sustain the demurrer, it is essential that plaintiff's complaint indicate on its face that his claim cannot be sustained, and the law will not permit recovery. *Hoffman vs. Misericordia Hospital of Philadelphia,* 439 Pa. 501, 267 A.2d 867 (1970); *Schott vs. Westinghouse Electric Corp.,* 436 Pa. 279, 259 A.2d 443

(1969); *Papieves v. Lawrence, supra.* If there is any doubt, this should be resolved in favor of overruling the demurrer. *Clevenstein v. Rizzuto,* 439 Pa. 397, 266 A.2d 623 (1970).

*Gekas v. Shapp,* 469 Pa. 1, 5–6, 364 A.2d 691, 693 (1976).

With the foregoing standards in mind, we hold that the personal participation of appellees Miller, Cook and Zollers in the alleged negligent, injury-producing actions of which appellants complain, has been sufficiently pleaded to withstand demurrer.

Accordingly, we vacate the order of the Superior Court and remand the record to the Court of Common Pleas of Cumberland County for further proceedings consistent with this opinion.

NIX, LARSEN and McDERMOTT, JJ., concur in the result.