**Kane v. Douglas**

C.P. of Lancaster County, no. CI-02-10790.

*Thomas D. Dell,* for plaintiff.
*George C. Werner,* for defendants Shenk and D&E.
*James H. Thomas* and *Susan P. Peipher,* for defendants Douglas, Vigunas and Max.

CULLEN, *J.,* February 5, 2004—On May 27, 2003, Laura Douglas, Michael A. Vigunas and Max International Converters Inc. filed preliminary objections to the amended complaint of Darryl Kane and Nexus Professional Associates Inc. Jerry Shenk and D&E Communications Inc. filed preliminary objections to the amended complaint on May 28, 2003. For the reasons set out in this opinion, the preliminary objections will be sustained in part and overruled in part.

## PROCEDURAL AND FACTUAL BACKGROUND

On December 16, 2002, Darryl Kane commenced this action against Laura Douglas, Michael A. Vigunas, Max International Converters Inc., Jerry Shenk and D&E Communications Inc. by filing a praecipe for writ of summons.

On March 5, 2003, the prothonotary, at the direction of Shenk and D&E, entered a rule on Kane to file a complaint. On March 26, 2003, a complaint was filed by Kane and Nexus Professional Associates Inc. All defendants filed preliminary objections, and on May 6, 2003, Kane and Nexus filed an amended complaint.

Douglas, Vigunas and Max filed preliminary objections to the amended complaint on May 27, 2003, and the preliminary objections of Shenk and D&E followed on May 28, 2003. Kane and Nexus filed a response to the preliminary objections on June 17, 2003.

The parties filed briefs in support of their respective positions, and these matters were subsequently referred to the court for resolution.

According to the amended complaint, Douglas and Vigunas are officers of Max, a Pennsylvania corporation. Shenk is an employee of D&E which is also a Pennsylvania corporation.

In November 2000, Kane entered into an oral agreement with Vigunas to perform consulting services and oversee operations of Max in exchange for $101,400. Pursuant to this agreement, Kane was to work three days per week for Max. Kane was to receive 20 percent of Max's gross profits and was also permitted to continue consulting work with third parties.

In January 2001, Vigunas, on behalf of Max, and Kane orally agreed that Max should pursue an ATM couponing system.[1] Max was to provide the necessary paper rolls for use in the ATM couponing system. Because Max was unable to attract or afford the experts to develop the computer software for the ATM couponing system, Kane incorporated Nexus for this purpose. In conformity with the oral agreement, Nexus was to license the ATM couponing software and Max was to provide the paper rolls to a third party which would administer and market the system. Nexus was to retain ownership of the software.

Nexus employees were to be compensated initially at less than the fair market value of their services and Nexus was also permitted to perform services for third parties to offset its operating costs. Nexus' computers and equipment were set up at Max's facility and Kane was permitted to operate Nexus at this location.

Plaintiffs contend that as early as December 2001, Max, without their knowledge or consent, entered into negotiations with a third party regarding the use and marketing of the ATM couponing system with Max representing that it owned the software.

The amended complaint alleges that on March 6, 2002, Nexus employees were locked out of the area where the Nexus server was located at Max's facility, and that Douglas unlawfully accessed Nexus' computers and server. In addition, Douglas purportedly denied Kane, Nexus and Nexus' clients access to their computers and server

---

1. The amended complaint does not indicate either the nature or purpose of this system.

by causing D&E to block communication with the Nexus server.

The following day, Kane and Vigunas met and agreed that Max would release Nexus' property in return for Kane returning property of Max's in his possession. When Kane entered the computer room at Max's facility to retrieve the Nexus equipment, he saw Douglas and Shenk. Shenk had a laptop computer hooked up to the Nexus server allegedly copying or downloading the software relating to the ATM couponing system from the Nexus server.

Plaintiffs allege that defendants unlawfully accessed the Nexus server and: (1) prevented Kane and Nexus' employees from obtaining access to the Nexus server in violation of the agreement between Kane and Max; (2) prevented Nexus' clients from obtaining access to the Nexus server in violation of the agreement; (3) unlawfully copied the ATM couponing software in violation of the agreement; and (4) provided the unlawfully copied information to third parties in order to gain an economic advantage.

Based on these allegations, Kane asserts claims against Max for breach of the agreement regarding the ATM couponing system, breach of the consulting agreement, violation of the Wage Payment and Collection Law,[2] fraud, intentional misrepresentation[3] and punitive damages. He seeks relief against Douglas and Vigunas for violation of the Wage Payment and Collection Law, fraud,

---

2. 43 P.S. §260.1 et seq.

3. The count captioned intentional misrepresentation is virtually identical to the fraud count.

intentional misrepresentation,[4] and punitive damages. Kane's remaining causes of action for conspiracy, misappropriation of trade secrets, punitive damages, and negligence are asserted against D&E based upon the acts of its employee, Shenk.

Nexus asserts causes of action for breach of the agreement regarding the ATM couponing system, misappropriation of trade secrets and punitive damages against Max. Nexus seeks to recover damages from Douglas and Vigunas based on claims for conspiracy, misappropriation of trade secrets, violation of the Racketeer Influenced and Corrupt Organizations Act (RICO),[5] and punitive damages. These same claims, as well as a cause of action for negligence, are also made against Shenk.

Douglas and Vigunas filed preliminary objections to the amended complaint challenging the legal and factual sufficiency of the RICO claims as well as the legal sufficiency of the claims for fraud, intentional misrepresentation and punitive damages asserted against them.

The preliminary objections of Shenk and D&E are in the nature of a demurrer to the causes of action for misappropriation of trade secrets, conspiracy, punitive damages, negligence, and RICO violations. Shenk also alleges that the RICO claims lack the requisite factual specificity.

In their briefs in opposition to the preliminary objections, plaintiffs withdrew the RICO counts against all defendants. The court, therefore, need address only the remaining issues.

---

4. The fraud and intentional misrepresentation counts are identical.
5. 18 U.S.C. §1961 et seq.

## DISCUSSION

The law to be applied in ruling on preliminary objections challenging the legal sufficiency of a complaint is clear. A court should sustain preliminary objections in the nature of a demurrer only where:

"the complaint is insufficient to establish the pleader's right to relief. . . . For the purpose of testing the legal sufficiency of the challenged pleading a preliminary objection in the nature of a demurrer admits as true all well-pleaded, material, relevant facts . . . and every inference fairly deducible from those facts. . . . The pleader's conclusions or averments of law are not considered to be admitted as true by a demurrer.

"Since sustaining the demurrer results in a denial of the pleader's claim or dismissal of his suit, a preliminary objection in the nature of a demurrer should be sustained only in cases that clearly and without a doubt fail to state a claim for which relief may be granted. . . . If the facts as pleaded state a claim for which relief may be granted under any theory of law then there is sufficient doubt to require the preliminary objection in the nature of a demurrer to be rejected. . . ." *Willet v. Pennsylvania Medical Catastrophe Loss Fund,* 549 Pa. 613, 619, 702 A.2d 850, 853 (1997) (quoting *The County of Allegheny v. The Commonwealth of Pennsylvania,* 507 Pa. 360, 372, 490 A.2d 402, 408 (1985)).

When doubt exists as to whether a demurrer should be sustained, the doubt should be resolved in favor of overruling it. *Mahoney v. Furches,* 503 Pa. 60, 468 A.2d 458 (1983).

In order to state a cause of action for fraud or intentional misrepresentation, the plaintiff must establish: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Gibbs v. Ernst,* 538 Pa. 193, 207, 647 A.2d 882, 889 (1994).

"It is well established that fraud consists of anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture." *Moser v. DeSetta,* 527 Pa. 157, 163, 589 A.2d 679, 682 (1991).

Allegations of fraud must be pled with specificity. Pa.R.C.P. 1019(b); *Muhammad v. Strassburger, McKenna, Messer, Shilobod and Gutnick,* 526 Pa. 541, 587 A.2d 1346 (1991). The reason for this requirement was articulated by the Supreme Court in *Bata v. Central-Penn National Bank of Philadelphia,* 423 Pa. 373, 224 A.2d 174 (1966).

"Averments of fraud are meaningless epithets unless sufficient facts are set forth which will permit an inference that the claim is not without foundation nor offered simply to harass the opposing party and to delay the pleader's own obligations. For this reason our rules require that fraud in either a complaint or reply must be 'averred with particularity.' Pa.R.C.P. 1019(b). Admit-

tedly the line between pleading facts and evidence is not always bright; therefore, we frequently condone the inclusion of statements, which except for this requirement, would be considered impertinent. . . . While it is impossible to establish precise standards as to the degree of particularity required in a given situation, two conditions must always be met. The pleadings must adequately explain the nature of the claim to the opposing party so as to permit him to prepare a defense and they must be sufficient to convince the court that the averments are not merely subterfuge." *Id.* at 379-80, 224 A.2d at 179. (citation omitted)

In the amended complaint, Kane alleges that Douglas was chief executive officer of Max (¶¶4, 95, 104) and that Vigunas was the company's president. (¶¶5, 130, 139.) With respect to each count of the amended complaint at issue, Kane also makes a general assertion that these individual defendants as an officer of Max "participated in, cooperated in and/or caused defendant Max International to engage in the tortious acts herein described." (¶¶96, 105, 131, 140.)

A corporate officer may be personally liable for damages suffered by a third party where he knowingly participates in the wrongful act. *Chester-Cambridge Bank and Trust Company v. Rhodes,* 346 Pa. 427, 31 A.2d 128 (1943); *Shay v. Flight C Helicopter Services Inc.,* 822 A.2d 1 (Pa. Super. 2003).

"The general, if not universal, rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor; but that an officer of a corporation who takes no part in the

commission of the tort committed by the corporation is not personally liable to third persons for such a tort, nor for the acts of other agents, officers or employees of the corporation in committing it, unless he specifically directed the particular act to be done or participated, or cooperated therein." *Wicks v. Milzoco Builders Inc.,* 503 Pa. 614, 621-22, 470 A.2d 86, 90 (1983).

Kane alleges in Counts II and III against Douglas that the actionable misrepresentations were made in January 2001, in connection with the agreement that Kane and Max would jointly pursue the ATM couponing system. (¶¶97-101, 106-110.) At no point, however, does Kane allege Douglas made any of the misrepresentations, that she was present when the statements were made or that she even knew they had been made. Allegations of fraud must be set out with particularity, and a vague assertion that Douglas "participated in, cooperated in and or caused" the corporation to engage in tortious conduct without any supporting specific factual averments is insufficient to state a cause of action against Douglas individually. Therefore, the preliminary objection to these counts will be sustained and Kane will be granted the opportunity to file an amended complaint.

A different result is warranted with respect to the identical allegations against Vigunas. Kane avers that the January 2001 agreement regarding the ATM couponing system was an oral agreement between himself and Vigunas on behalf of Max. (¶¶14-23.) Under these circumstances, the reasonable inference is that the representations referred to in Counts II and III against Vigunas (¶¶132-136, 141-145) were made to Kane by Vigunas and would be sufficient to allege the latter's personal

participation in the claimed wrongful conduct. Accordingly, the preliminary objection to these particular counts will be overruled.

Douglas and Vigunas also challenge the sufficiency of Count IV against each of them seeking punitive damages. A request for punitive damages does not constitute a cause of action. *Feingold v. SEPTA,* 512 Pa. 567, 517 A.2d 1270 (1986); *Nix v. Temple University of the Commonwealth System of Higher Education,* 408 Pa. Super. 369, 596 A.2d 1132 (1991). It is a mere incident to a cause of action. *Id.* Count IV against both defendants will be dismissed for failure to state a cause of action, and Kane will be permitted to file an amended complaint in which he may properly plead a request for punitive damages in the ad damnum clause.[6]

The first preliminary objection of Shenk and D&E is a demurrer to the claims of Nexus against them for misappropriation of trade secrets.

Although usually arising in an employment context, the Superior Court has indicated that a claim for misappropriation of trade secrets[7] is not limited to such a rela-

---

6. Since an amended complaint may be filed, plaintiffs should note that a cause of action for fraud or intentional misrepresentation is a single tort, *Gibbs v. Ernst,* 538 Pa. 193, 647 A.2d 882 (1994), and should be pled as one count and not as two identical counts. In addition, all claims for punitive damages should be pled in the ad damnum clause and not as separate causes of action. *Feingold v. SEPTA,* 512 Pa. 567, 517 A.2d 1270 (1986).

7. Pennsylvania law includes as a trade secret any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. *Den-Tal-Ez Inc. v. Siemens Capital Corp.,* 389 Pa. Super. 219, 566 A.2d 1214 (1989) (citing Restatement of Torts, §757 comment b).

tionship. *O.D. Anderson Inc. v. Cricks,* 815 A.2d 1063 (Pa. Super. 2003). The court need not discuss all of the elements necessary to state such a cause of action as defendants assert the absence of only one, *i.e.,* an allegation that defendants made use of a trade secret. Under either the formulation referred to in *O.D. Anderson Inc. v. Cricks,* 815 A.2d 1063 (Pa. Super. 2003) or that cited in *Den-Tal-Ez Inc. v. Siemens Capital Corp.,* 389 Pa. Super. 219, 566 A.2d 1214 (1989), an element of the cause of action is the improper use or disclosure of the trade secret to the owner's detriment.

In this case, Nexus alleges that Shenk, while employed by D&E, improperly copied or downloaded the ATM couponing software from the Nexus server for Max. (¶¶35-41, 250, 256, 257, 297-299, 305, 306.) Given the lenient standard applicable to preliminary objections in the nature of a demurrer, the court cannot say as a matter of law that this activity does not constitute improper "use" or "disclosure" of a trade secret.[8] Accordingly, this preliminary objection will be overruled.

Shenk and D&E next challenge Nexus' claims alleging a civil conspiracy. To prove a civil conspiracy, it must be shown that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means. *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 412 A.2d 466 (1979); *Brinich v. Jencka,* 757 A.2d 388 (Pa. Super. 2000). Proof of malice, *i.e.,* an intent to injure, is essential in proof of a conspiracy. *Skipworth by Williams v. Lead Industries Asso-*

---

8. Since neither Shenk nor D&E has raised the issue, both apparently concede for purposes of the preliminary objections that the ATM couponing system software is a trade secret.

*ciation Inc.,* 547 Pa. 224, 690 A.2d 169 (1997); *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 412 A.2d 466 (1979).

Defendants argue that Nexus has failed to allege a common purpose between them and the other defendants at the time Shenk performed the acts about which they complain. Contrary to defendants' position, Nexus has alleged that Shenk, acting on behalf of D&E, agreed and conspired with Douglas and Vigunas to illegally misappropriate Nexus' trade secrets in the form of the ATM couponing software and programs and that, in furtherance of this conspiracy, defendants engaged in or caused the downloading of the software. (¶¶244-246, 292-294.) These allegations clearly state a common, illegal purpose.

Defendants also contend that the conspiracy counts must be dismissed for the reason that in the absence of a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act. *McKeeman v. Corestates Bank N.A.,* 751 A.2d 655 (Pa. Super. 2000). For the reasons stated earlier, the court found that the allegations of misappropriation of trade secrets were adequate to withstand a demurrer on the ground asserted. Since the underlying cause of action remains viable, the conspiracy count cannot be dismissed.

The preliminary objections questioning the legal sufficiency of the claims for punitive damages will be sustained. As previously stated, a request for punitive damages does not constitute a cause of action and is merely incidental to one. *Feingold v. SEPTA,* 512 Pa. 567, 517 A.2d 1270 (1986); *Nix v. Temple University of the Commonwealth System of Higher Education,* 408 Pa. Super.

369, 596 A.2d 1132 (1991). Nexus will be permitted to amend its complaint to request punitive damages in the ad damnum clause of any count in which entitlement to such damages is supported by the facts alleged.

In order to state a cause of action for negligence, the plaintiff must demonstrate: (1) a duty or obligation recognized by the law that requires an actor to conform his actions to a standard of conduct for the protection of others against unreasonable risk; (2) failure on the part of the defendant to conform to that standard of conduct, or a breach of duty; (3) a reasonably close causal connection between the breach of duty and the injury sustained; and (4) actual loss or damages that result from the breach. *Gutteridge v. A.P. Green Services Inc.,* 804 A.2d 643 (Pa. Super. 2002). In their preliminary objections, Shenk and D&E contend that no duty is imposed upon them by statute or case law under the circumstances.

The primary element in any negligence cause of action is that the defendant owes a duty of care to the plaintiff. *Althaus ex rel. Althaus v. Cohen,* 562 Pa. 547, 756 A.2d 1166 (2000). The determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and forseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution. *Id.*

In the amended complaint, Nexus alleges that Shenk is a professional provider of communication services and that D&E is a commercial provider of communication

services. (¶¶280, 311.)[9] As a result, Nexus asserts that both defendants owed a heightened duty to the general public, including Nexus, to inquire as to the ownership rights in any software applications copied or downloaded by either defendant for any of their clients. (¶¶280, 311.) Nexus, however, has failed to cite any authority indicating that such a heightened duty exists as alleged, nor has it pled any facts which would permit the court to determine that there is such a heightened duty under the criteria used by the Supreme Court. See *Althaus ex rel. Althaus v. Cohen,* 562 Pa. 547, 756 A.2d 1166 (2000).[10] It is unclear from the amended complaint whether the cause of action asserted by Nexus is dependent upon the existence of a heightened duty of care.

At this time, the allegations of the amended complaint are simply inadequate to permit an evaluation of these claims. Accordingly, these preliminary objections will be sustained and Nexus will be allowed to amend its complaint.

In its final preliminary objection, D&E argues that it cannot be liable for any of the intentional torts[11] alleg-

---

9. Paragraph 289 of the amended complaint alleges that D&E is engaged in the trade and business of providing communications and computer networking services.

10. In its brief, Nexus states that defendants hold themselves out as experts in the field of communications, including computers. The essential facts must be set out in the pleadings, and statements in a brief cannot satisfy this requirement.

11. The intentional torts for which D&E is said to be liable are conspiracy and misappropriation of trade secrets. A claim for punitive damages is not a cause of action. D&E does not challenge the sufficiency of the cause of action imposing vicarious liability with respect to the negligence claim.

edly committed by Shenk on the ground that Nexus has failed to allege that Shenk was acting within the scope of his employment by D&E when the conduct occurred.

An employer may be held vicariously liable for the intentional torts of its employee provided certain criteria are met. *Costa v. Roxborough Memorial Hospital,* 708 A.2d 490 (Pa. Super. 1998). Among these criteria is that the employee was acting within the scope of his employment. *Id.*

Nexus alleges in connection with the conspiracy count that Shenk was acting "in the normal course of his employment with D&E and within the scope of his employment." (¶291.) While this allegation is not repeated in the count alleging misappropriation of trade secrets, Nexus does state that Shenk, "on behalf of defendant D&E, participated in, cooperated in and/or caused defendant Max International to engage in the tortious acts herein described." (¶299.)

Nexus further incorporated by reference paragraph 291 of the amended complaint in this count. Under the rules applicable to preliminary objections in the nature of a demurrer, the court concludes that these allegations are sufficient. Therefore, this preliminary objection will be overruled.

For the reasons stated above, the court enters the following:

## ORDER

And now, February 5, 2004, upon consideration of the preliminary objections of defendants Laura Douglas, Michael A. Vigunas, Max International Converters Inc.,

Jerry Shenk and D&E Communications Inc. to the amended complaint of plaintiffs Darryl Kane and Nexus Professional Associates Inc., the court orders that:

(1) The preliminary objections of defendant Douglas to the counts alleging a claim for fraud and intentional misrepresentation are sustained.

(2) The preliminary objections of defendant Vigunas to the counts alleging a claim for fraud and intentional misrepresentation are overruled.

(3) The preliminary objections of defendants Douglas and Vigunas to the counts alleging a claim for punitive damages are sustained.

(4) The preliminary objections of defendants Shenk and D&E to the counts alleging a claim for misappropriation of trade secrets are overruled.

(5) The preliminary objections of defendants Shenk and D&E to the counts alleging a claim for conspiracy are overruled.

(6) The preliminary objections of defendants Shenk and D&E to the counts alleging a claim for punitive damages are sustained.

(7) The preliminary objections of defendants Shenk and D&E to the counts alleging a claim for negligence are sustained.

(8) The preliminary objection of defendant D&E to the counts alleging claims based upon vicarious liability is overruled.

Plaintiffs are granted 20 days from the date of this order to file an amended complaint.